## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KOURTNEY PADILLA | : | |
| 14 Yale Street, Apt. D | : | |
| Nutley, NJ 07110 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: |
| | : | |
| v. | : | |
| | : | |
| ROSELLE PARK BOARD OF | : | |
| EDUCATION *d/b/a* ROSELLE PARK | : | |
| SCHOOL DISTRICT | : | |
| 510 Chestnut Street | : | |
| Roselle Park, NJ 07204 | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Kourtney Padilla (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and

through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by Roselle Park Board of

Education *d/b/a* Roselle Park School District (*hereinafter* "Defendant") of Section 1981 of the

Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of

1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq*.) and the Pregnancy Discrimination Act ("PDA"),

the Family and Medical Leave Act ("FMLA"- 29 USC § 2601), the New Jersey Family Leave Act

("NJ FLA"), and the New Jersey Law Against Discrimination ("NJ LAD").[1]    As a direct

consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff has filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC")
asserting violations of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000d *et. seq*.) and the

## JURISDICTION AND VENUE

2.        This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.        This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.        Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

## PARTIES

5.        The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.        Plaintiff is an adult individual, with an address set forth in the caption.

7.        Roselle Park Board of Education is an organization that operates the Public Elementary and Secondary Schools within the Roselle Park School District.  Plaintiff's paystubs

---

Pregnancy Discrimination Act ("PDA").  In order to file her claims under Title VII and the PDA, she is required to wait until she receives a case closure and/or right to sue letter from the EEOC. Therefore, Plaintiff intends to amend her complaint to add violations of Title VII and the PDA once such claims have been administratively exhausted with the EEOC and the EEOC issues a right-to-sue letter.

and W-2 forms list Roselle Park Board of Education as Plaintiff's employer located at the address set forth in the above-caption.

8.    At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

9.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.    Plaintiff is a black (African-American) female individual.

11.    Plaintiff was employed by Defendant for approximately two years as a math teacher at Roselle Park High School, from in or about September of 2018 until her unlawful termination (discussed further *infra*) effective June 30, 2020.

12.    Throughout Plaintiff's tenure with Defendant, she was a hard-working employee who performed her job well.

13.    Plaintiff was primarily supervised by Roselle Park High School Principal, Sara Costa (*hereinafter* "Costa") and Assistant Principals, James Foy (*hereinafter* "Foy") and Ellen Backert (*hereinafter* "Backert").  All of the aforesaid members of management were Caucasian.

14.    Plaintiff was employed by and through annually-renewing contracts in the discretion of Defendant (and its management).

15.    In or about mid-May of 2020, Plaintiff was informed that her contract was not going to be renewed.   As a result, she was effectively terminated as of June 30, 2020 (the date in which Defendant deemed to be her official separation from employment based upon the end of the school year).

16.     Plaintiff was informed verbally and in writing that her aforesaid termination was a layoff, assured that her performance was not in any manner a factor, and led to believe economic conditions warranted a reduction in force.  In fact, Plaintiff's performance was complimented (and recommended via recommendation letters).

17.     Plaintiff believes and therefore avers that her termination was actually premised upon (unlawful) discriminatory and retaliatory criteria based on her race and concerns of race discrimination, pregnancy, and maternity plans (set forth in more detail *infra*).

18.     For example, at the time of Plaintiff's termination, she was approximately 6 months pregnant.  However, Defendant's management, including but not limited to Costa and Backert, had known of Plaintiff's pregnancy since in or about February/March of 2020.

19.     In or about February/March of 2020, Plaintiff further discussed with Defendant's management, including but not limited to Costa, her upcoming delivery, scheduling needs, and anticipated maternity leave, including that she would likely miss a very minimal part of the upcoming year in the fall of 2020 (at the commencement of the 2020-2021 school year).

20.     Upon Plaintiff's information and belief, her aforesaid anticipated maternity leave was supposed to be protected under the (federal) Family and Medical Leave Act ("FMLA") and/or the (state) New Jersey Family Leave Act ("NJ FLA").

21.     Plaintiff's aforesaid discussions with Defendant's management (including Costa), regarding her pregnancy, scheduling needs, and anticipated delayed start in the fall of 2020 with management were all prior to and in close proximity to the non-renewal of Plaintiff's contract for the 2020-2021 school year.

22.     Plaintiff discovered shortly after being informed in or about mid-May of 2020 that her contract was not going to be renewed for the 2020-2021 school year, that she had been *singled*

*out* for layoff unlike other faculty.  Specifically, Plaintiff was selected in lieu of: (1) other faculty in different departments whose roles Plaintiff could have performed; and (2) other *newly* hired teachers in Plaintiff's same department (with less seniority).

23.    Plaintiff believes and therefore avers that if neutral criteria were applied for an alleged job elimination or reduction in force (*if one were even necessary*), she would not have been the appropriate candidate; thus, her pregnancy and anticipated FMLA were substantial, determinative factors in her selection for termination.

24.    Separately and apart from the discrimination and retaliation that Plaintiff was subjected to because of her pregnancy and request for anticipated maternity/FMLA leave, Plaintiff was also subjected to discrimination and retaliation because of her race.

25.    Upon Plaintiff's observations and belief, there is statistically minimal and disproportionate black (or African-American) representation in the faculty or management of Defendant.  In fact, for the majority of Plaintiff's tenure with Defendant, she was the only black member of the faculty at Roselle Park High School.

26.    Shortly before being informed of the non-renewal of her contract for the 2020-2021 school year, Plaintiff had on separate occasions expressed concerns of racial disparities in the workplace and concerns of a lack of diversity to Defendant's management, including but not limited to Costa and Foy.  For example, but not intended to be an exhaustive list, Plaintiff informed Defendant's management that:

    a.  There is a clear diversity gap present in the school and that at least one teacher had informed her that "ethnic diversity is very limited at our school and is not representative of the student body" and that at least one student had asked why "there are no Black teachers at the school";

b. Students had expressed to Plaintiff that there was racism apparent in the student body (i.e. one student reported that while running in gym class he heard a student comment that a black student was running really fast to which another Caucasian student stated "you have to run fast when you're running from the slave master";

c. At least one student informed Plaintiff that she was "the first teacher of color that I've had since I've been here" (a span of several years); and

d. Black students had difficulty expressing their concerns and challenges because Caucasian teachers can't always relate to their struggles or things they needed to talk about.

27.     Plaintiff tried to explain her aforesaid concerns of racial disparities and the lack of diversity to Defendant's management in a constructive, non-antagonistic and productive manner, but there is no question that Defendant's management knew she was expressing concerns overall premised upon race.

28.     Plaintiff personally felt that she was treated disparately by Defendant's entirely Caucasian management as they often directed their questions and concerns about the math department to her Caucasian co-workers, failing to solicit and/or address her feedback or concerns.

29.     Instead of meaningfully addressing Plaintiff's aforesaid concerns of racial disparities and the lack of diversity within Defendant, Defendant's management completely ignored Plaintiff's complaints, and then abruptly informed her that her contract would not be renewed for the 2020-2021 school year, for completely pretextual reasons (discussed *supra*).

30.     Plaintiff believes and therefore avers that she was also terminated because of her race and/or in retaliation for her concerns of race discrimination.

**COUNT I**
**Violations of 42 U.S.C. Section 1981**
**([1] Race Discrimination and [2] Retaliation**

31.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32.    During Plaintiff's employment with Defendant, she was subjected to and raised concerns of discrimination and disparate treatment because of her race.

33.    Instead of investigating Plaintiff's aforesaid complaints of and/or objections to race discrimination, Defendant's management ignored them and left her legitimate concerns unresolved.

34.    In or about mid-May of 2020, in close proximity to her concerns of race discrimination, Plaintiff was abruptly informed that her contract was not being renewed, effectively terminating her as of June 30, 2020 (the date in which Defendant deemed to be Plaintiff's official separation from employment based upon the end of the school year).

35.    Plaintiff believes and therefore avers that she was really terminated because of her race and/or her complaints of/objections to race discrimination.

36.    These actions as aforesaid constitute unlawful discrimination and retaliation under Section 1981.

**COUNT II**
**Violations of the New Jersey Law against Discrimination ("NJ LAD")**
**([1] Race Discrimination and [2] Retaliation**

37.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38.    During Plaintiff's employment with Defendant, she was subjected to and raised concerns of discrimination and disparate treatment because of her race.

7

39.   Instead of investigating Plaintiff's aforesaid complaints of and/or objections to race discrimination, Defendant's management ignored them and left her legitimate concerns unresolved.

40.   In or about mid-May of 2020, in close proximity to her concerns of race discrimination, Plaintiff was abruptly informed that her contract was not being renewed, effectively terminating her as of June 30, 2020 (the date in which Defendant deemed to be Plaintiff's official separation from employment based upon the end of the school year).

41.   Plaintiff believes and therefore avers that she was really terminated because of her race and/or her complaints of/objections to race discrimination.

42.   Defendant's actions as aforesaid constitute unlawful discrimination and retaliation in violation of the NJ LAD.

## COUNT III
### <u>Violations of the New Jersey Law against Discrimination ("NJ LAD")</u>
### (Pregnancy Discrimination)

43.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44.   In or about February/March of 2020, Plaintiff informed Defendant's management that she was pregnant.

45.   In or about February/March of 2020, Plaintiff also discussed with Defendant's management her birth plans, scheduling needs, and planned maternity leave under the FMLA, which might require her to miss a very minimal part of the upcoming year in the fall of 2020 (at the commencement of the 2020-2021 school year.

46.     In or about mid-May of 2020, in close proximity to her Plaintiff's discussions with Defendant's management regarding her birth plans, scheduling needs, and planned maternity/FMLA leave, Plaintiff was abruptly terminated for pretextual reasons.

47.     Plaintiff believes and therefore avers that she was terminated from Defendant because of her pregnancy and/or her discussions on pregnancy planning and maternity leave.

48.     These actions as aforesaid constitute unlawful discrimination and retaliation under the NJ LAD.

## COUNT IV
## Violations of the Family and Medical Leave Act ("FMLA")
### (Interference & Retaliation)

49.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

51.     Plaintiff requested leave for her own medical reasons from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A. § 2611(2)(i).

52.     Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment prior to requesting FMLA leave.

53.     Defendant is engaged in interstate commerce and employ[ed] fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A. § 2611(4)(A)(i).

54.     Plaintiff is entitled to receive leave pursuant to 29 U.S.C.A. § 2612(a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

9

55.     Shortly after requesting FMLA leave for the birth of her child, Plaintiff was terminated from her employment with Defendant.

56.     Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; and/or (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; and/or (4) by making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA.

57.     These actions as aforesaid constitute violations of the FMLA.

**COUNT V**
**<u>Violations of the New Jersey Family Leave Act (NJ FLA)</u>**
**(Retaliation & Interference)**

58.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.     Plaintiff was an eligible employee under the definitional terms of the NJ FLA, N.J.S.A. § 34:11B-3(e).

60.     Plaintiff requested leave for the birth of her child from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of N.J.S.A. § 34:11B-3(e).

61.     Plaintiff had at least 1,000 hours of service with Defendant during her last full year of employment pursuant to the requirements of N.J.S.A. § 34:11B-3(e).

62.     Defendant is engaged by a corporation that employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to N.J.S.A. § 34:11B-3(f)(3).

10

63.     Plaintiff was entitled to receive leave pursuant to N.J.S.A. § 34:11B-4 for a total of twelve (12) work weeks of leave on a block or intermittent basis.

64.     Shortly after requesting leave for the birth of her child, Plaintiff was terminated from her employment with Defendant.

65.     Defendant committed interference and retaliation violations of the NJ FLA by: (1) terminating Plaintiff for requesting and/or exercising her NJ FLA rights; (2) by considering Plaintiff's NJ FLA leave needs in making the decision to terminate her; and/or (3) terminating Plaintiff to intimidate her and/or prevent her from taking NJ FLA-qualifying leave in the future; and/or (4) by making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the NJ FLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

11

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation; and

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  July 31, 2020

12